```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHN L. TURKUS,
                                                    MEMORANDUM AND ORDER
                   Plaintiff,                       11-CV-3887 (FB)

         -against-

MICHAEL J. ASTRUE,
 Commissioner of Social Security,

                   Defendant.
------------------------------------------------------------x
```

*Appearances:*

*For the Plaintiff:*  
CHRISTOPHER JAMES BOWES, ESQ.  
54 Cobblestone Drive  
Shoreham, NY 11786

*For the Defendant:*  
LORETTA E. LYNCH, ESQ.  
United States Attorney  
CANDACE SCOTT APPLETON, ESQ.  
Assistant United States Attorney  
Eastern District of New York  
271 Cadman Plaza East  
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

Plaintiff John Turkus seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for benefits under the Social Security Act (the "Act"). Both parties move for judgment on the pleadings. For the reasons set forth below, the case is remanded for further proceedings.

**I**

Turkus claims that he suffers from a number of impairments, including pain in his knees, neck, shoulder blades, and lower back, bulging discs in his cervical spine, and protruding discs in his lumbar spine. After suffering an injury to his right knee in August 2003, Turkus stopped working in March 2004. On February 15, 2006, Turkus filed an

application for Supplemental Security Income ("SSI").  After the Social Security Administration denied his application, Turkus requested a hearing before an Administrative Law Judge ("ALJ").  ALJ Greenberg denied Turkus' disability claim on December 11, 2006. The ALJ's decision became final after the Appeals Council denied Turkus' request for review, upon which Turkus then sought judicial review.  On April 20, 2008, Judge Sifton remanded the case with instructions for the ALJ to consider the applicable law regarding the treating physician regulations and credibility findings.  A subsequent hearing was held before ALJ Friedman on October 30, 2008, after which the ALJ found that Turkus was not disabled within the meaning of the Act.  On June 16, 2011 the Appeals Council denied Turkus' request for review, rendering the Commissioner's decision to deny benefits final.  Turkus timely sought judicial review.[1]

## II

In applying the familiar five-step process, the ALJ found as to the first four steps that:  (1) Turkus had not engaged in substantial gainful activity since March 14, 2004, the alleged onset date; (2) he had severe impairments resulting from injuries to the right and left knees, cervical strain, and a lumbar herniated disc; (3) such impairments did not meet the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) Turkus was unable to perform his past relevant work as a firefighter for the City of New York.  AR at 200-205. Turning to step five, the ALJ determined that Turkus' residual functional capacity ("RFC")

---

[1] Based on a second disability application, Turkus was awarded benefits beginning October 31, 2008.  AR at 164.  Thus, this proceeding involves only his claim for benefits from March 14, 2004 to October 30, 2008.

2

allowed him to perform sedentary unskilled work. AR at 206; *see* 20 C.F.R. 1520(g) (setting forth the fifth step in the five-step analysis). The ALJ then concluded that Turkus "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and as such denied his application.[2] AR at 206.

### III

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Turkus challenges the ALJ's disability determination, arguing that the Commissioner erred in: (A) failing to give "controlling weight" to his treating physician's RFC opinion; and (B) improperly rejecting Turkus' subjective allegations of pain. The Court finds that the ALJ erred in consideration of both of the above factors.

**A. The Treating Physician Rule**

Turkus first argues that the RFC opinion of his treating physician, Dr. Xiao, should have been given controlling weight pursuant to the treating physician rule. Dr. Xiao found that Turkus could lift and carry less than ten pounds, sit for less than four hours, and stand or walk for less than one hour during an eight-hour workday. AR at 225. Dr. Xiao's opinion is tantamount to a finding that Turkus was unable to perform sedentary work, and

---

[2]The burden of proof is on the claimant in the first four steps, after which it shifts to the Commissioner at the fifth step. *See* 20 C.F.R. §§ 404.1560(c)(2), 416.920(b)-(g).

3

thus disabled. *See* 20 C.F.R. § 404.1567(a) (sedentary work is the least rigorous category of work, requiring the ability to lift ten pounds, sit for at least six hours and stand or walk for at least two hours in an eight-hour workday); Social Security Ruling 83-10. Under the treating physician rule, "the opinion of a claimant's treating physician as to the nature or severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory or diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record'." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404. 1527 (d)(2)). However for "some kinds of findings - including the ultimate finding of whether a claimant is disabled and cannot work," the Commissioner "considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). In these circumstances, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Id.*

Nonetheless, under the Regulations the Commissioner "is required to explain the weight it gives to the opinions of a treating physician," *id.*, and a "[f]ailure to provide "good reasons" for not crediting a treating physician's opinion is a ground for remand. *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). In making the RFC determination, the ALJ placed particular emphasis on Turkus' ability to sit for prolonged periods of time. Choosing to discredit Dr. Xiao's opinion on Turkus' limitations, the ALJ found that Dr. Xiao's findings were not adequately supported by the record. Instead the ALJ relied upon the conclusions of consulting physician Dr. Nepomniashy and physical therapist Emanuel Vitata to find that Turkus was capable of performing sedentary work. The Court holds that the ALJ's analysis

4

was in error and that he did not provide the requisite "good reasons" for failing to credit Dr. Xiao's opinion.

The ALJ first concluded that Dr. Xiao's opinion was not well-supported because of "difficulty with finding a clinical basis for the degree of limitation noted." AR at 204. In support, the ALJ cited to Dr. Xiao's notes of a physical examination which yielded ranges of motion in Turkus' neck and lower back that were 80% and 90% of normal, respectively. However, the ALJ failed to recognize that Dr. Xiao reported such ranges of motion "with pain." AR at 223. The ALJ next concluded that Dr. Xiao's report that Turkus suffered from "'intermittent' pain" indicated that the pain was "not constant or severe." AR at 204. Yet this conclusion was in error; the *frequency* of pain is not necessarily indicative of the *level of severity* of such pain. Finally, the ALJ questioned Dr. Xiao's failure to refer Turkus to an orthopedist or order additional testing after he complained of increased back pain in July 2008. AR at 203. The ALJ did not cite to any type of medical support that such a course of action was warranted; thus, it was not a "good reason" for rejecting Dr. Xiao's opinion. Rather, the ALJ's conclusion demonstrates that he improperly "substitute[d] his own judgment for competent medical opinion" by calling into question Dr. Xiao's treatment decisions based on what he, as a non-medical professional, believed would be an appropriate course of treatment. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (finding that the ALJ "improperly set his own expertise against that of [the] physician who submitted opinions to him.").

The ALJ then relied upon consulting physician Dr. Nepomniashy to find that Turkus was capable of performing sedentary work. In so concluding, the ALJ erred in making unwarranted assumptions about Dr. Nepomniashy's findings. Dr. Nepomniashy's report

5

states that Turkus "should not perform tasks requiring climbing, standing, kneeling, squatting and standing or prolonged ambulation." AR at 99-100. Without consulting Dr. Nepomniashy, the ALJ interpreted Dr. Nepomniashy's repeated use of the term "standing" to mean "standing" as well as "prolonged standing," AR at 255-256, and concluded that because there were "no limitations on sitting in [the] report," this supported Turkus' ability to sit for the requisite six hours. AR at 204. However, in another area of the report Dr. Nepomniashy indicates that Turkus was capable of sitting for no more than an hour. AR at 99. As the record is unclear, upon remand the ALJ should inquire with Dr. Nepomniashy about the meaning of his repeated use of the term "standing," and whether this was in fact intended. *See Burgess*, 537 F.3d at 128 ("the ALJ generally has an affirmative obligation to develop the administrative record.").

Finally, the ALJ erred in relying upon physical therapist Emanuel Vitata's report as a basis for disregarding Dr. Xiao's opinion. Physical therapists are not "acceptable medical source[s]" as defined in the regulations. 20 C.F.R. § 404.1513. Their opinions are therefore considered evidence from an "other source." 20 C.F.R. § 404.1513(d)(1). Although they are entitled to some weight, particularly when there is a longstanding treatment relationship, they are not entitled to the same deference as the opinion of a treating physician. *Id.* While some parts of Vitata's report indicated a lesser degree of limitation than that noted by Dr. Xiao, this was not a sufficient reason to set aside the entirety of Dr. Xiao's opinion. Further in error, the ALJ relied upon Vitata to conclude that Turkus was capable of sitting for up to 6 hours per day. AR at 204. Vitata never made such a finding. He only concluded that Turkus was capable of sitting for *less than* 6 hours per day. AR at 91. The record is unclear, however, as

6

to how much less than 6 hours per day Vitata believed Turkus was capable of sitting. Upon remand, the ALJ should clarify with Vitata whether Turkus was capable of sitting for less than four hours in order to determine whether his opinion is truly inconsistent with Dr. Xiao's.

**B. Subjective pain and suffering**

Turkus also argues that the Commissioner failed to properly consider his subjective testimony regarding his degree of pain and limitations. The regulations provide for a two-step process in evaluating the credibility of a claimant's subjective complaints. *See* 20 C.F.R. § 404.1529(c). First, the ALJ must determine whether the claimant suffers from a medically determinable impairment or impairments that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 404.1529(b). Next, the ALJ must evaluate the intensity, persistence and limiting effects of the claimant's symptoms, which requires the ALJ to make a credibility finding based on the entire record. 20 C.F.R. § 404.1529(c)(1)-(4). The ALJ found that while Turkus' impairments "could reasonably be expected to cause the alleged symptoms," his statements concerning the intensity, persistence, and limiting effects of these symptoms were "not credible" because they were not supported by the record. AR at 202-203.

The ALJ's adverse credibility finding, and corresponding rejection of Turkus' subjective allegations of pain, were based on a fundamental misreading of the record. The ALJ first discussed a discrepancy between Turkus' testimony and his complaints to Dr. Xiao: "[t]he claimant complained of 'increasing pain while sitting more than 45 minutes or standing more than 30 minutes'; yet, at the hearing, less than three weeks later, the claimant estimated that he could sit maybe 20 to 30 minutes, and stand maybe 15 minutes." AR at 204. Despite the ALJ's contentions, Turkus' statements to Dr. Xiao took place in 2005 and 2006, not three

7

weeks before the ALJ hearing. AR at 110-111. Additionally, although the ALJ found such a discrepancy troubling because Turkus "testified that his limitations had been static since March 2004," this is not an accurate account of Turkus' testimony. AR at 204. During the hearing, Turkus testified only that his limitations of sitting, standing and walking had been present since March 2004, and that subsequent to that time period he had neither experienced "great improvement" nor "dramatic improvement." AR at 247.

While the ALJ also took issue with a "paucity of treatment . . . indicat[ing] that the claimant's impairments were not severely limiting," this ignores a record replete with evidence to the contrary. AR at 204. As of October 2005, Turkus had been attending physical therapy twice per week and was taking prescription medications including Vicodin, Flexeril, Lidodern, and Hydrocodone. AR at 88, 99, 111, 240, 246. While the ALJ doubted Turkus' claims of neck, back and left knee pain because in May 2005 an independent medical examiner found "a disability of [Turkus'] right knee which would preclude him from performing the full duties of New York City firefighter," AR at 222, this does not address the existence of Turkus' other ailments.

Lastly, the ALJ erred in finding Turkus non-credible because "despite living in Staten Island the claimant is able to travel to downtown Brooklyn to see Dr. Xiao." AR at 204. Turkus's ability to travel to see Dr. Xiao is not indicative of his ability to perform sedentary work, therefore this was not a reasonable basis for questioning Turkus' credibility. *See Balsamo v. Chater*, 142 F.3d 75, 81-82 (2d Cir. 1998) ("a claimant need not be an invalid to be found disabled.") (citation omitted); *see also Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989) ("[w]hen a disabled person gamely chooses to endure pain in order to pursue important goals, it would

8

be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working."). Rather, the ALJ should have afforded Turkus "substantial credibility" in light of his eighteen year work history as a New York City firefighter. *See Horan v. Astrue*, 350 Fed. App'x 483, 485 (2d Cir. 2009) ("[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.") (citation omitted). Upon remand the ALJ is directed to make a credibility determination consistent with the requirements of 20 C.F.R. § 404.1529(c)(1)-(4).

## IV

This case has now been pending for over six years, evincing the "often painfully slow process by which disability determinations are made." *Butts*, 388 F.3d at 387. The Court is mindful of the frustration and financial hardship that this has undoubtably imposed upon the claimant. On the present record, even with its deficiencies, Turkus has satisfied his burden of showing disability, and the Commissioner has failed to satisfy his burden of proving Turkus' limitations did not preclude him from working altogether. Because the administrative record requires further development on this issue, however, remand is the appropriate remedy. *See Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (providing for remand where there are "gaps in the administrative record"). In light of the substantial delay that has transpired, the ALJ is directed to complete further administrative proceedings within 60 days and, if the ALJ again denies the claim, the Commissioner shall issue a final decision within 60 days of any appeal from that denial. If these deadlines are not met and the delay is not attributable to Turkus, a calculation of benefits owed Turkus must immediately be made. *See Butts*, 388 F.3d at 387 (imposition of a time limit is appropriate where the issue is the ALJ's

9

step five decision and remand could result in substantial additional delay); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 356 (E.D.N.Y. 2010) (providing for calculation of benefits where deadlines are not met). For the foregoing reasons, the ALJ's decision is reversed and this case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 7, 2012